IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  06-cv-01260-WYD-BNB

GOLDER ASSOCIATES, INC., a Georgia corporation,

      Plaintiff(s),

v.

EDGE ENVIRONMENTAL, INC.;
DANIEL DUCE;
CAROLYN LAST;
ARCHIE REEVE; and
MARY BLOOMSTRAN,

      Defendant(s).

---

**ORDER**

---

I.    <u>Introduction and Background</u>

THIS MATTER is before the Court on Defendants' Motion to Dismiss Under

F.R.C.P. 12(b)(6), filed August 25, 2006 (document #10).

In this case, Plaintiff, Golder Associates, Inc. ("GAI"), asserts eleven causes of

action against Defendants, Edge Environmental, Inc. ("Edge"), and Daniel Duce,

Carolyn Last, Archie Reeve, and Mary Bloomstran ("the Individual Defendants"), based

on allegations that the Individual Defendants, who are former employees of GAI,

plotted to leave GAI "en masse" to join Edge where they now perform services for GAI's

former clients on former GAI projects.  Compl. at ¶ 1.  In their motion to dismiss,

Defendants seek dismissal of the second cause of action for breach of contract, and

the tenth cause of action for violation of the Colorado Organized Crime Control Act,

C.R.S. § 18-17-104 ("COCCA").  In addition, Defendants seek to strike Plaintiff's demand for punitive damages.

According to the Complaint, GAI provides consulting services in ground engineering and environmental services, primarily in the mining, manufacturing, power, waste management, oil and gas and water resources management industries.  Compl. at ¶ 10.  In 2004, GAI purchased PIC Technologies, Inc. ("PIC"), another company involved in the oil and gas industry, from its sole owner, Aaron Clark. Compl. at ¶ 13. GAI executed the sale in two stages; the first required GAI to pay PIC a little less than half the agreed upon purchase price of the business, and the second stage required GAI to pay the rest of the purchase price directly to the Individual Defendants, who were employed by PIC at the time.  Compl. at ¶ 15.  Payment to the Individual Defendants was made in the form of two non-performance based bonuses in 2005 and 2006.  The second stage of the transactions was memorialized in four offer letters extended to each Individual Defendants.  Compl. at ¶¶ 15, 17.  The Individual Defendants were officially hired as employees of GAI on December 20, 2004.  Compl. at ¶ 19.

As part of the hiring process, each Individual Defendant was required to sign a Confidentiality and Employee Invention Agreement ("CEI Agreement").  Compl. at ¶ 27. After hiring the Individual Defendants, GAI assigned full-time support employees to each Defendant in the Denver office, opened and staffed an office in Laramie, Wyoming (where Defendant Reeve was based), and expanded the Denver office. Compl. at ¶¶ 28(a)-(c).

On March 3, 2006, all of the Individual Defendants resigned from GAI.  Compl. at ¶ 32.  As a result of this resignation, GAI alleges that it was forced to close its Laramie office, resulting in a loss of employment for the four employees hired to staff that office. Compl. at ¶ 34.  Following their resignation from GAI, the Individual Defendants began doing business throughout the region under the name Edge Environmental, Inc. Compl. at ¶ 40.  GAI alleges that the Individual Defendants plotted their mass resignation from GAI, solicited each other and other GAI employees in doing so, and spent significant time planning and setting up Edge prior to leaving GAI.  Compl. at ¶¶ 35-36, 40.  GAI further alleges that the Individual Defendants planned their departure with little notice to the company in order to force two of GAI's most valued clients, Shell and Williams, to transfer any existing and future business to Edge, allowing the Individual Defendants to start Edge with a significant amount of business already in place.  Compl. at ¶¶ 39, 41-42.

II.   Analysis

A.   Motion To Dismiss

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "'must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996), *cert. denied*, 522 S.Ct. 858 (1997) (quoting *Gagan v. Norton*, 35 F.3d 1473, 1474 n. 1 (10th Cir. 1994)).  "A complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) only 'if the plaintiff can prove no set of facts to support a claim for relief.'"  *Id.* (quoting *Jojola v. Chavez*, 54 F.3d 488, 490 (10th Cir.

1995)).  If, accepting all well-pleaded allegations as true and drawing all reasonable

references in favor of plaintiffs, it appears beyond doubt that no set of facts entitle

plaintiffs to relief, then the court should grant a motion to dismiss.  *See Tri-Crown, Inc.*

*v. American Fed. Sav. & Loan Ass'n*, 908 F.2d 578, 582 (10th Cir. 1990).  A complaint

must be dismissed if, accepting the allegations as true, it appears beyond doubt that

Plaintiff can prove no set of facts in support of his claim that would entitle him to relief.

*Meade v. Grubbs*, 841 F.2d 1512, 1526 (10th Cir. 1988).

      B.    <u>Whether the COCCA Claim Should Be Dismissed</u>

      I first address Defendants' assertion that Plaintiff has failed to plead wire fraud

with particularity in connection with its tenth claim for relief under COCCA.  According

to Defendants, Plaintiff's Complaint fails to provide specific dates of the alleged wire

fraud, fails to identify from whom and to whom the wire communications were being

sent, which specific person was making the representation, whether the representation

was material, and reliance on that false representation by the Plaintiff.  Specifically,

Defendants complain that Plaintiff fails to assert the specific material

misrepresentations made in the alleged wire communications.

      In contrast to the liberal pleading requirements of Rule 8, wherein the plaintiff

must only plead "a short and plain statement of the claim showing that the pleader is

entitled to relief..." so that the Defendant has "adequate notice of a plaintiff's claims

sufficient to allow a response or defense," RICO and COCCA claims must be pled with

particularity under Rule 9(b). *Cayman Exploration Corp. v. United Gas Pipe Line Co.*,

873 F.2d 1357, 1362 (10th Cir. 1989) (RICO claim); *see also New Crawford Valley, Ltd.*

*v. Benedict*, 877 P.2d 1363, 1371 (Colo. App. 1993) (COCCA claim).  In meeting the standard required by Rule 9(b), "plaintiffs must sufficiently allege each element of a RICO violation and its predicate acts of racketeering with particularity..." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir. 1992).  Plaintiffs "must also identify the circumstances constituting the fraud." *Ambraziunas v. Bank of Boulder*, 846 F. Supp. 1459, 1463 (D. Colo. 1994) (quoting *Saine v. A.I.A., Inc.*, 582 F. Supp. 1299, 1303 (D. Colo. 1984)).  "With respect to each Plaintiff, this will involve 'identification of the particular defendants with whom the plaintiff dealt; designation of the occasions on which fraudulent statements were made, and by whom; and designation of occasions on which fraudulent statements were made and how.'"  *Id.*; *see also United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.*, 2000 WL 1595976 at *3 (10th Cir. 2000) ("'[a]t a minimum, Rule 9(b) requires that a plaintiff set for the who, what, when, where and how of the alleged fraud'") (quotation and internal quotation marks omitted).

However, "Rule 9(b) does not require that a complaint set forth detailed evidentiary matter as to why particular defendants are responsible for particular statements, or that the allegations be factually or legally valid.  *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1253 (10th Cir. 1997).  "Instead, Rule 9(b) requires that the pleadings give notice to the defendants of the fraudulent statements for which they are responsible." *Id.*  In other words, the complaint must give the defendants notice of what they are charged with, and "[n]o more is required by Rule 9(b)." *Id.*

In connection with its COCCA claim, GAI alleges that the Individual Defendants engaged in several acts of racketeering activity, "all of which have been carried out in

the conduct of Edge's affairs," and all of which were allegedly committed "in part through writings transmitted by wire in interstate commerce." Compl. at ¶ 90. GAI generally alleges that between December 2005 and March 3, 2006, "the Individual Defendants and in particular defendant Bloomstran," (1) diverted to a third party hydrogeological work being performed by GAI for Shell; (2) refused to participate in soliciting additional work from certain potential clients; (3) solicited one another and other GAI employees to leave their employment with GAI to work for Edge; and (4) solicited GAI clients to transition work from GAI to the Individual Defendants' new business. Compl. at ¶ 90(a)-(d). According to GAI, each of these "racketeering activities" constitutes a "scheme or artifice to defraud" in violation 18 U.S.C. § 1346 and, therefore, constitutes a predicate act pursuant to C.R.S. § 18-17-203(5)(a).

Plaintiff acknowledges that where wire fraud is alleged as a predicate act of a COCCA claim, the plaintiff "must specify the time, place, and content of the alleged false representation, and describe with particularity any allegedly fraudulent transaction, and how the particular mailing or transaction furthered the fraudulent scheme." *Weiszmann v. Kirkland & Ellis*, 732 F. Supp. 1540, 1546 (D. Colo. 1990). "[T]he plaintiff must identify specifically each person who is alleged to be liable under RICO." *Weiszmann*, 732 F. Supp. at 1546. "Merely collectivizing defendants in an alleged pattern of racketeering activity will not suffice." *Id.* In other words, "a '[p]laintiff is under a Rule 9(b) obligation when dealing with more than one defendant to specify which defendant told which lie [or committed other criminal activity] and under what circumstances.'" *Saine*, 582 F. Supp. at 1303 (quotation omitted). Further, "a plaintiff

must...provide some factual basis for a claim that a defendant conspired with another."
*Weiszmann*, 732 F. Supp. at 1546.

Here, Plaintiff generally avers that the alleged fraud took place "on or about December 2005," and "on or before March 3, 2006."  While Plaintiff sets forth the general subject matter of the alleged wire transmissions, it does not specify the contents of the alleges transmissions, or the nature of the misrepresentations made, or to whom they were sent.  Plaintiff's general allegations that Defendant Bloomstran communicated with a unspecified third party regarding hydrogeological work for Shell are not sufficient.  Nor are Plaintiff's allegations that all of the Individual Defendants communicated with GAI regarding the Overland Pipeline project, or with one another about leaving their employment with GAI.  The Complaint fails to set forth what statements any of the Individual Defendants may have made concerning their departure from GAI, or how such statements further the alleged fraudulent scheme.  In short, the Complaint does not give Defendants adequate notice of the alleged fraud sufficient to allow them to respond or defend.  Accordingly, because Plaintiff's tenth cause of action fails to allege the circumstances of fraud with sufficient particularity, that claim must be dismissed.

      C.    <u>Whether Plaintiff's Non-Solicitation Agreement is Void as a Matter of Law</u>

In next address Defendants' contention that Plaintiff's non-solicitation agreement is void as a matter of law.  According to Defendants, the CEI Agreement they signed is void pursuant to C.R.S. § 8-2-113(2), which provides that "any covenant not to compete which restricts the right of any person to receive compensation for performance of

skilled or unskilled labor or for any employer shall be void."

The clause at issue in the CEI Agreement states:

> <u>Non-Solicitation</u> - During the term of my employment and for a further period of one (1) year following any termination of such employment, I will not directly or indirectly solicit or encourage any employee or consultant of the Company to leave or terminate such employment or consultancy for any reason, without limitation, becoming employed or otherwise engaged in any capacity by me (or any person or entity associated with or employing me or owned to any degree directly or indirectly by me), nor will I assist others in doing so.

Plaintiff contends that non-solicitation clause at issue is valid because it is not a "covenant not to compete."  Plaintiff further asserts that even if § 8-2-113(2) does apply, the non-solicitation clause is part of the exception for agreements that are part of the statutory exception for purchase and sale of a business.

As an initial matter, I find that § 8-2-1113(2) applies to the non-solicitation clause at issue.  In *Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, (Colo. App. 2001), the Colorado Court of Appeals applied § 8-2-113(2) to construe a non-solicitation clause that is very similar to the clause at issue.  As in *Atmel*, the non-solicitation clause at issue in this case could be interpreted to as having the effect of preventing the Individual Defendants from working together at Edge and, therefore, it is covered by restraint of trade prohibition contained in § 8-2-113(2).

However, I find that non-solicitation agreement is not void because it falls within the statutory exception for "contracts for the purchase and sale of a business or the assets of a business."  C.R.S. § 8-2-113(2)(a).  Defendants contend that this exception

is unavailable because the Individual Defendants did not have a direct ownership interest PIC and had nothing to do with the sale of PIC to GAI.

The purpose of enforcing covenants not to compete which are ancillary to the sale of an established business "is to make the good will of the business conveyed 'a saleable asset by protecting the buyer in the enjoyment of that for which he pays." *Gibson v. Eberle*, 762 P.2d 777, 779 (Colo. App. 1988). In this context, the covenant not to compete is meant to prevent the seller of the business from soliciting the buyer's new customers and to protect the good will inherent in the purchase. *DBA Enterprises, Inc. v. Findlay*, 923 P.2d 298, 302 (Colo. App. 1996).

Here, even thought the Individual Defendants may not have had a direct ownership interest in PIC, GAI has alleged that part of its acquisition of PIC involved payment of $293,738.94 - over half of the purchase price of PIC - to the Individual Defendants in the form of two non-performance based bouses. Compl. at ¶ 15. GAI alleges that it purchased PIC in exchange for certain fixed assets, PIC's rights under certain contracts, and PIC's intellectual property and intangible assets including its reputation in the community and established relationships with clients like Williams and Shell. Compl. at ¶ 6. In addition, the Purchase Agreement contains a clause stating that all PIC employees must execute GAI standard CEI Agreement. Pl. Ex. A, IV, ¶ 4.2. Whether or not the signing of the CEI Agreement was a condition of sale, it was clearly ancillary to the sale, and meant to protect the GAI's right to enjoy the business good will for which it paid. Therefore, I find that the CEI Agreement falls under the statutory exception for "contracts for the purchase and sale of a business or the assets of a

business." C.R.S. § 8-2-113(2)(a).

    D.    <u>Whether Plaintiff's Request for Punitive Damages Should Be Dismissed</u>

Finally, Defendants assert that GAI's request for punitive damages must be dismissed. Defendants note that C.R.S. § 13-21-102(1.5)(a) prohibits inclusion of a claim for exemplary damages in any initial claim for relief. In response, Plaintiff asserts that § 13-21-102(1.5)(a) conflicts with federal procedure Rule 8(a)(3), which states that a plaintiff must include, in its initial pleading, "a demand for judgment for the relief the pleader seeks." Plaintiff cites *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1299 (11th Cir. 1999), in which the Eleventh Circuit held that a statute similar to the Colorado statute at issue was fully pre-empted by Rule 8(a)(3). *Cohen* notwithstanding, I find that I should give effect to the Colorado statute, and dismiss Plaintiff's request for punitive damages without prejudice. *See Witt v. Condominiums at the Boulders Ass'n*, 2006 WL 348086 (D. Colo., Feb. 13, 2006) (dismissing a claim for exemplary damages under C.R.S. § 13-21-102(1.5)(a)). However, if Plaintiff establishes a *prima facie* basis for awarding punitive damages at trial, I will entertain a motion to amend the Complaint at that time.

III.    <u>Conclusion</u>

For the reasons set forth above, it is hereby

ORDERED that Defendants' Motion to Dismiss Under F.R.C.P. 12(b)(6), filed August 25, 2006 (document #10) is **GRANTED IN PART**. As set forth herein, Plaintiff's Eleventh Claim for Relief for violation of the Colorado Organized Crime Control Act, C.R.S. § 18-17-104 is **DISMISSED**. Further, Plaintiff's punitive damage claim is

**DISMISSED WITHOUT PREJUDICE**.  The motion to dismiss is denied in all other

respects.

     Dated:  March 30, 2007

                                        BY THE COURT:


                                        s/ Wiley Y. Daniel
                                        Wiley Y. Daniel
                                        U. S. District Judge